WALLACE *et al. v.* BLAKE *et al.*[1]

*(Common Pleas of New York City and County, General Term.* February 4, 1889.)

1. SALE—MANUFACTURED GOODS—MERCHANTABLE QUALITY.
  Where goods ordered to be manufactured are delivered to the purchaser, who without examination sells them to others, and there is no collateral warranty or agreement as to the quality, the purchaser cannot recover damages on the ground that the goods were unmerchantable.

2. SAME—ACTION FOR PRICE—DEFECT IN QUALITY—EVIDENCE.
  There is no evidence to sustain a defense, in an action for the price of yarn sold, that the yarn was unsound and unmerchantable, when it is simply shown that other yarn than that in suit, purchased from plaintiff by defendant, was defective, and it is uncertain whether the defect was inherent in the yarn at the time of its delivery.

3. SAME—COUNTERMAND OF ORDER.
  Where defendant sent an order to plaintiff for the manufacture and shipment of yarn, a subsequent direction to await further orders before shipment, a discontinuance of the spinning of the yarn not being directed, was not a countermand of the first order.

4. SAME—DAMAGES—COST OF SHIPMENT.
  But where the goods were shipped to defendant against his repeated requests to the contrary, plaintiff cannot recover the packing and shipping expenses.

Appeal from city court, general term.

Action by William Wallace and others against Frederick D. Blake and others. The general term of the city court affirmed a judgment of the trial term for plaintiffs, and defendants appeal.

Argued before LARREMORE, C. J., and ALLEN and BOOKSTAVER, JJ

*Wm. C. Beecher,* for appellants. *Norwood & Coggeshall,* for respondents.

BOOKSTAVER, J The action was brought to recover the price of 1,000 pounds of yarn manufactured, and claimed to be sold and delivered by plaintiffs to the defendants. The plaintiffs are manufacturers of woolen yarns under the firm name of Wallace & Co., near Bradford, England. The defendants compose the firm of F. D. Blake & Co., carrying on business in the city of New York. On the 22d June, 1886, the defendants ordered of the plaintiffs 500 pounds of a kind of yarn known in the market as "No. 260," to be shipped as soon as possible. On the 30th June in the same year the defendants ordered 1,000 pounds more of the same yarn, to be manufactured and shipped, 500 pounds as soon as possible, and 500 pounds two weeks later. On the 8th July, in the same year, defendants by telegram directed the plaintiffs to "await further cable before shipping last 1,000 pounds ordered," and on the same day wrote them the reason therefor, which was that similar yarns from other parties had proved unsatisfactory, and they wished to test the 500 pounds first ordered before the second order was carried out. To this plaintiffs replied by letter on July 8th, saying that they had nearly finished the yarn upon the receipt of the cable, and that it would probably be ready for shipment within a week or so, and intimated that they would not cancel the order. On the 29th July defendants wrote plaintiffs, in substance, claiming that their cablegram and letter of July 8th was a cancellation, and notifying plaintiffs that they would not hold themselves bound by their order of June 30th, and in effect again notifying the plaintiffs not to ship the goods. In disregard of

[1] See 2 N. Y. Supp. 403.

these orders, the plaintiffs in a few days, and without any further orders or directions from defendants, shipped the goods by a common carrier to this port. The defendants refused to receive them, and reshipped them to the plaintiffs. Thereupon plaintiffs commenced this action to recover the contract price. In their complaint they alleged a course of dealings with the defendants whereby they claimed the delivery was complete when the goods were delivered to a common carrier at Liverpool, and the invoices and proper papers were mailed to the defendants. The answer admitted the order for the 1,000 pounds of yarn, but denied that it was ever delivered to or accepted by the defendants; and alleged that the yarn was unsound, unmerchantable, and unfit for use; also that they had notified the plaintiffs to stop spinning the yarn, and not to ship it to them; and set up as a counter-claim that the first 500 pounds of yarn ordered was unsound, rotten, and unmerchantable, and claimed damages by reason thereof in the sum of $200. On the trial it appeared that the first 500 pounds ordered, and referred to in the counter-claim, had not been examined by the defendants, but that they had without examination sold and delivered the same to other parties; thereby putting it out of their power to return the same to the plaintiffs, even if unmerchantable.

The contract being executory, and no collateral warranty or agreement as to quality appearing, the court below very properly overruled the counter-claim. *Iron Co.* v *Pope*, 108 N. Y. 232, 15 N. E. Rep. 335; *Norton* v. *Dreyfuss*, 106 N. Y. 90, 12 N E. Rep. 428.

As to the 1,000 pounds yarn sued on, the evidence showed the plaintiffs had fully performed everthing to be done on their part, and were entitled to judgment, unless the defendants established one of the two defenses set up in their answer, by proving that the yarn was unsound and unmerchantable, or that they had properly and in due time countermanded the order.

As to the first of these defenses, no proof whatever was offered concerning the character of the yarn, either when shipped or when returned by the defendants. They did not examine it. On the trial they gave some proof as to the rotten character of the 500 pounds first ordered. But even this evidence left it uncertain whether the defect was an inherent infirmity in the yarn when delivered, or whether it arose from the subsequent treatment of it, and was not of itself sufficient to warrant the submission to the jury of the question of the soundness or unsoundness of the yarn manufactured under a subsequent and independent order.

The evidence offered did not establish the defense that the second order had been countermanded properly and in due time. The cable and letter of July 8th merely directed the plaintiffs not to ship the yarn. It did not countermand the order, nor did it instruct the plaintiffs to discontinue the spinning of the yarn. They were therefore justified in going on with the work, and looking to the defendants for their compensation. It thus appears that the plaintiffs, when the testimony was closed, were entitled to the direction of a verdict in their favor, and the only question remaining is whether the verdict was directed for the proper amount; in other words, what is the rule of damages in such cases? It has been broadly stated that, when the buyer refuses to receive the goods ordered when tendered, the seller is given the choice between three remedies: *First*, to sell the goods on behalf of the purchaser, and recover the difference between the contract price and that realized upon the sale; *second*, to retain the thing as his own, and recover the difference between the contract price and the market price at the time and place of delivery; and, *third*, to hold the property for the purchaser, and recover of him the entire purchase money. 2 Schouler, Pers. Prop. § 522; *Dustan* v. *McAndrew*, 44 N. Y. 72; *Hayden* v. *Demets*, 53 N. Y. 526; *Hunter* v. *Wetsell*, 84 N. Y. 549; *Bigelow* v. *Legg*, 102 N. Y. 652, 6 N. E. Rep. 107. In the case under consideration the defendants had repeatedly ordered the plaintiffs not to ship the goods. It was not necessary for them to do so in order to entitle

them to recover. *Lawrence* v. *Miller*, 86 N. Y. 132. This they did, however, and thereby imposed upon the defendant a burden which they had no right to do; for the law will not allow even a delinquent party to a contract to be recklessly or needlessly exposed by the other to a loss greater than actually results from its breach. The plaintiffs, therefore, should have been allowed to recover for the contract price of the goods, but not for the packing and shipping expenses incident upon the alleged delivery. The case presented shows that those expenses amounted to $6.68. The amount incurred for freight, which should be borne by the plaintiffs, was not included in the verdict directed. It follows, therefore, that the judgment should be reversed, unless plaintiffs consent to reduce the judgment by deducting therefrom $6.68, with interest thereon. If this is done, the judgment should be affirmed, without costs of this appeal to either party. All concur.